| | |
|---|---|
| **UNITED STATES DISTRICT COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | Case No. 1:25-cv-01782-JLR |

-----------------------------------------------------------X
LA'RUE RAYNAUD and
EMMANUEL "TAHON" RAMIREZ,

                       Plaintiff,                  **AMENDED COMPLAINT**

  -against-

                                                   **Jury Trial Demanded**

MULLIGAN SECURITY LLC,

                       Defendant,
-----------------------------------------------------------X

Plaintiff La'Rue Raynaud ("Raynaud" or "Plaintiff") and Plaintiff Emmanuel "Tahon" Ramirez ("Ramirez" or "Plaintiff") alleges against Defendant Mulligan Security LLC ("Mulligan" or "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Raynaud brings this action under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), seeking damages for injuries sustained due to: (1) a hostile work environment based on his **sex/gender**, (2) **sex/gender** discrimination, and (3) retaliation by his former employer for opposing sex/gender discrimination.

2. Ramirez brings this action under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), seeking damages for injuries sustained due to: (1) a hostile work environment based on his **sex/gender** and (2) **sex/gender** discrimination.

3. As such, this action seeks declaratory, injunctive, and monetary relief to remedy Defendants' unlawful employment practices, including **sex/gender** discrimination, a hostile work environment, and retaliation against the Plaintiffs.

## JURISDICTION

4. This Court has subject matter jurisdiction over Plaintiffs' claims under Title VII pursuant to 28 U.S.C. §§ 1331 and 1343, because those claims arise under the laws of the United States.

5. This Court has supplemental subject matter jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## EXHAUSTION OF REMEDIES

7. Plaintiff Emmanuel Ramirez duly filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The Charge Number 520-2025-05143.

8. On or about June 2, 2025, the EEOC terminated its processing of the Charge of Discrimination, making no determination on the merits of the Charge, and issued Plaintiff a Notice of Right to Sue.

9. Plaintiff has exhausted his administrative remedies and files this Complaint within 90 days of the EEOC's issuance of his Notice of Right to Sue, satisfying all procedural prerequisites for bringing this action.

10. Plaintiff La'Rue Raynaud duly filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge Number 520-2025-05151.

11. On or about July 15, 2025, the EEOC terminated its processing of the Charge of Discrimination, making no determination on the merits of the Charge, and issued Plaintiff a Notice of Right to Sue.

12. Plaintiff has exhausted his administrative remedies and files this Complaint within ninety (90) days of the EEOC's issuance of his Notice of Right to Sue, thereby satisfying all procedural prerequisites for bringing this action.

## PARTIES

**Plaintiff La'Rue Raynaud ("Raynaud" or "Plaintiff")**

13. Plaintiff Raynaud ("Raynaud" or "Plaintiff") was and is a citizen of Kings County in the State of New York.

14. Plaintiff Raynaud ("Raynaud" or "Plaintiff") at all times is a man.

15. For the duration of his employment with Mulligan Security Group, Raynaud reported to The Roosevelt Hotel, located at 45 E 45th St, New York, NY 10017.

16. For the duration of his employment with Mulligan Security Group, Raynaud was an employee of Mulligan Security Group within the meaning of all applicable statutes.

**Plaintiff Emmanuel "Tahon" Ramirez ("Ramirez" or "Plaintiff")**

17. Plaintiff Ramirez ("Ramirez" or "Plaintiff") was and is a citizen of Kings County in the State of New York.

18. Plaintiff Ramirez ("Ramirez" or "Plaintiff") at all times is a man.

19. For the duration of his employment with Mulligan Security Group, Ramirez reported to The Roosevelt Hotel, located at 45 E 45th St, New York, NY 10017.

20. For the duration of his employment with Mulligan Security Group, Ramirez was an employee of Mulligan Security Group within the meaning of all applicable statutes.

**Defendant Mulligan Security LLC ("Mulligan", the "Company" or "Defendant")**

21. Defendant Mulligan Security LLC ("Mulligan", the "Company" or "Defendant") was and is a foreign limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware.

22. Defendant Mulligan Security LLC is incorporated in Delaware, therefore, is a citizen of Delaware.

23. Mulligan was and is authorized to conduct business in the State of New York.

24. Mulligan is a provider of security and fire safety services.

25. Mulligan has an office located at 7 Penn Plaza, Suite 200, New York, NY 10001.

26. At all times relevant to this action, Mulligan Security Group, in the normal course of conducting its business, provided security services at The Roosevelt Hotel, located at 45 E 45th Street, New York, NY 10017.

27. For the duration of Raynaud's employment, Mulligan Security Group employed fifteen (15) or more employees.

28. For the duration of Ramirez's employment, Mulligan Security Group employed fifteen (15) or more employees.

29. At all times relevant to this action, Mulligan Security Group was an employer of Ramirez within the meaning of all applicable statutes.

30. At all times relevant to this action, Mulligan Security Group was an employer of Raynaud within the meaning of all applicable statutes.

## FACTUAL ALLEGATIONS

31. On or about October 2024, Raynaud commenced his employment with Mulligan.

32. Raynaud was employed as a Security Guard.

33. Raynaud worked for Mulligan at a Shelter at The Roosevelt Hotel located at 45 E 45th Street, New York, NY 10017.

34. Raynaud worked five (5) days per week from (7:00 a.m. to 3:30 p.m.) for a total of 42.5 hours per week.

35. Raynaud was paid $24.19 per hour.

36. Raynaud job duties and responsibilities included but were not limited to patrolling, monitoring, responding to emergencies and enforcing rules inside the Roosevelt Hotel.

37. On or about September 2024, Ramirez commenced his employment with Mulligan.

38. Ramirez was employed as a Security Guard.

39. Ramirez worked for Mulligan at a Shelter at The Roosevelt Hotel located at 45 E 45th Street, New York, NY 10017.

40. Ramirez worked five (5) days per week from (7:00 a.m. to 3:30 p.m.) for a total of 42.5 hours per week.

41. Ramirez was paid $24.19 per hour.

42. Ramirez job duties and responsibilities included but were not limited to patrolling, monitoring, responding to emergencies and enforcing rules inside the Roosevelt Hotel.

## NYSHRL & NYCHRL SEX/GENDER DISCRMINATION

43. On or around December 2024, Blake ("Blake") (Last Name Currently Unknown) – a supervisor for Defendant, commenced his employment with Defendant and began working at The Roosevelt Hotel located at 45 E 45th Street, New York, NY 10001.

44. Blake was assigned to work in at the same location as the Plaintiffs.

45. At all times relevant, during Plaintiff's employment, Blake was Raynaud's direct supervisor.

46. At all times relevant, during Plaintiff's employment, Blake was Ramirez's direct supervisor.

## SEXUAL HARASSMENT

47. Immediately after his commencement, Blake engaged in unlawful conduct by sexually harassing the Plaintiffs.

## PLAINTIFF RAYNAUD SEXUAL HARASSMENT

48. On or about December 5, 2024, Raynaud was performing his duties as a Security Guard at The Roosevelt Hotel, located at 45 E 45th St., New York, NY 10017, specifically on the Arcade Floor, near the elevator.

49. Raynaud was scheduled to work from 7:00 p.m. to 3:30 a.m. when his supervisor, Blake (last name unknown) ("Harasser").

50. Blake initiated conversation with Raynaud by making casual inquiries before shifting the discussion to personal topics.

51. Blake fixated on Raynaud's physical appearance, making unprofessional and unwelcome comments, including that Plaintiff had "nice eyelashes" and a "good height."

52. Without any regard for workplace professionalism, Blake abruptly shifted the conversation to explicit details about his own sex life, boasting about his sexual escapades and lamenting that he had not had intercourse with his partner recently.

53. Raynaud attempted to ignore the inappropriate remarks and made it clear that he was not interested in engaging in such discussions.

54. Blake escalated his sexual harassment further by propositioning Raynaud for a threesome, lewdly stating that **"if anyone wanted to join"** it would be an option.

55. Blake directed an obscene and offensive comment at Raynaud, stating: **"If you want to fuck me, you have to fuck my boyfriend."**

56. Blake then escalated his harassment further, adding, **"And you have to be paying us."**

57. Blake only made these sexually explicit comments in the presence of men, demonstrating a targeted and deliberate pattern of harassment.

58. Blake's inappropriate and sexually charged comments **persisted over time**, including remarks such as, **"Food ran through me like I would be running through my man."**

59. On or about December 31, 2024, Blake once again approached Raynaud, this time in the presence of coworker Amanda (last name unknown), and directed another degrading and sexually explicit comment, stating: **"You must have a big asshole**."

60. On the same day of December 31, 2024, Raynaud filed a formal written complaint with his account manager, Santiago (last name unknown), detailing the harassment.

61. The written report by Raynaud stated, **"My supervisor Blake then said to me, 'You must have some good asshole.' I looked at him like he had 10 heads and said, 'what???' He laughed an[d] walked away."**

62. Santiago assured Raynaud that he would escalate the matter to HR for a full investigation, yet no immediate action was taken to address the hostile work environment.

63. That same day, in clear retaliation, in direct retaliation of the Raynaud's complaint, Blake wrote up Raynaud for having his phone out, despite the established rule that phones were permitted as long as employees were not on camera.

64. Blake ordered Raynaud to report to the supervisor's office at the hotel, where he repeatedly stated, **"They made me write you up,"** attempting to deflect responsibility while still enforcing a retaliatory disciplinary action.

65. Blake was not separated from Raynaud, despite the Company being aware of the harassment.

66. Other supervisors were fully aware of the ongoing harassment but deliberately ignored it, failing to intervene or take corrective action. This willful inaction allowed Blake's misconduct to continue unchecked.

67. On January 8, 2025, Raynaud personally visited the HR office to inquire about the status of his formal complaint.

68. HR representative Mercedes (full name unknown) informed Raynaud that HR had not received any prior documentation regarding his complaints and that this was the first time they were hearing of the matter, despite Raynaud having previously reported the harassment to Santiago (Account Manager) on December 31, 2024.

69. Santiago failed to escalate the complaint as promised, effectively chilling Raynaud's complaint and allowing the hostile work environment to persist.

70. Despite Raynaud's repeated complaints, Blake continued to harass him on a near-daily basis, further reinforcing that Mulligan Security Group tolerated and enabled his misconduct.

71. Additional crude and inappropriate comments made by Blake included, **"Did you bust a nut for the day?"**—a vulgar and sexually suggestive remark directed at Raynaud.

72. Raynaud was forced to interact with Blake almost every day, enduring continued harassment without any protection or intervention from his employer.

73. On January 8, 2025, Raynaud re-submitted his complaint regarding the sexual harassment he endured on December 05, 2024.

74. Raynaud stated: **"While at work my supervisor Blake who I had just met kept coming to my post to speak to me and another coworker name Emmanuel. He kept flirting with us, making comments about sex and when we told him we weren't interested he stated, "I have a boyfriend." I then stated, "well if that's the case you shouldn't come to work and speak to boys here the way you are." He brushed it off but continued speaking on the sex that him and his partner has stating "I eat ass." Anybody who wants to join me and my boyfriend has to pay. "And asking us what position we play. I wrote this up to forwarded and it was not."**

75. Raynaud submitted an additional complaint regarding the sexual harassment he endured on December 31, 2024.

76. Raynaud stated: **"On December 31, 2024, My Supervisor Blake kept coming to my post making small talk while doing this I checked my phone and he encouraged to move back so that the cameras could not see me. He then proceeding talking t o me but would slide in little sexual harassment being gay and things him and his boyfriend do**

in bed. I went to break and when I came back he saw me smiling and ask, "Are you smiling because your n***a has you happy?" I stated" of course we not going anywhere. "My supervisor Blake then said to me, "You must have some good asshole." I looked at him like he had 10 heads and said "what???" He laughed and walked away. He eventually came back to talk and I wasn't much responsive."

77. Raynaud submitted a third complaint regarding Blake's retaliation.

78. Raynaud stated: **"at 2:30 today. Only an hour before we shift ends. Today I got 10 (ten) missed calls from my disabled niece while at work I quickly moved to the side to make sure she was okay. And to let her know I would call her back. In the mist of this my account manager (Mr. Santiago) saw me as he walked past. I immediately put my phone away. He looked at me and told me not to take it out again . and then he said, "a matter of fact, I'm going to call you in the office soon" Throughout this time I was not combative at all and stated, "Okay." I eventually was called into the office where I then was told I was being written up for my phone I accepted and signed willingly. After signing Mr. Santiago then added that I not only have to leave the building but to not return until Tuesday to have a meeting with him. I was still not combative left work and decided to come into the office."**

79. Raynaud's Complaint continued, **"Leo [another supervisor] made him write me up about my phone that he allowed me to use about 3 hours prior when I went to sign my write-ups they gave it to me to sign and acted as if it had nothing to do with them. I took the write up and back to post. While at my post, my supervisor Blake continued to try to go back and forth with me about the write up. I stated to him while stood there talking smack that if he is going to write me up he shouldn't think it's okay to**

**say the things he's saying to me. I told my Leo Wells and my account manager Mr. Santiago who made me write a statement and said they were forwarding it to HR. I have never heard back about it and have been at work with the same supervisor since."**

80. On January 15, 2025, Raynaud was abruptly terminated by Eugene Hatchet, the Mulligan Site Manager, due to Blake's retaliatory conduct.

81. No investigation was conducted into Raynaud's complaints, despite multiple reports of Blake's sexual harassment and Santiago's failure to escalate the issue.

82. Raynaud's termination was a blatant act of retaliation for reporting sexual harassment, further evidencing Mulligan Security Group's complete disregard for employee rights and legal obligations.

### PLAINTIFF RAYNAUD SEXUAL HARASSMENT

83. Ramirez not only witnessed this exchange but also personally experienced similar inappropriate and offensive behavior from Blake, further confirming the pervasive hostile work environment.

84. On or about November or December 2024, while Ramirez was performing his duties as a Security Guard at The Roosevelt Hotel, located at 45 E 45th St., New York, NY 10017, his supervisor, Blake (last name unknown) ("Harasser"), approached him at his post and immediately began making inappropriate and sexually explicit remarks.

85. Without any regard for professionalism or workplace boundaries, Blake looked Ramirez up and down and stated, **"You look good standing on the post"** before escalating his harassment further by adding, **"You look like a fuck good."**

86. Ramirez was stunned by Blake's brazen sexual harassment, but refused to engage, ignoring the comment and firmly telling Blake to leave him alone.

87. Blake walked away but made it clear that his harassment was far from over, smirking and stating, "I'll be back."

88. Blake's conduct only worsened from there. He persistently propositioned Ramirez, repeatedly asking him to come to his house to **"smoke and chill."**

89. Blake made it abundantly clear that his intentions were sexual, casually making statements such as, **"We do a little something at my house"** and **"Whatever grown men do, we do."**

90. He shamelessly described his activities at home, explicitly stating that he and his boyfriend smoked weed and drank together, and then suggested Ramirez should join them.

91. It became evident that Blake's invitations were nothing more than attempts to lure Ramirez into a threesome, similar to the proposition make to Plaintiff Raynaud.

92. Blake asked Ramirez, **"Is [Plaintiff] La'Rue your mans?"** making clear that he was attempting to determine whether Ramirez and Raynaud were in a relationship.

93. In the presence of both men, Blake continued his relentless sexual harassment, stating, **"I see the energy"** and **"That would be hot."**

94. He went so far as to suggest, **"Us three, that would be nice, we should chill at my house"** before adding, **"You guys look like you fuck good."**

95. His perverse obsession with Ramirez and other male employees, such as Raynaud, was blatant, predatory, and completely unrestrained.

96. Blake sought excuses to touch Ramirez.

97. Under the guise of **"play fighting,"** Blake found every opportunity to make physical contact, touching Ramirez's arms, shoulders, and chest without consent.

98. On one occasion, Blake's inappropriate touching escalated when, after roll call, he forcibly grabbed Ramirez by the neck.

99. Ramirez was visibly uncomfortable with Blake's constant and unwanted physical contact. His discomfort was so apparent that a coworker, Shaun Davis, stepped in and intervened to put an end to Blake's inappropriate **"play fighting."** Despite Davis's intervention, Blake continued his pattern of misconduct, treating Ramirez and other male employees as his personal targets for sexual advances and harassment.

100. Ramirez's Account Manager, Santiago (last name unknown), became aware of Blake's conduct and directly, from Plaintiff Raynaud multiple complaints and asked Ramirez if he wanted to file a formal report.

101. However, Ramirez, in fear of retaliation, declined at that time.

102. Santiago acknowledged that Blake had been engaging in the same behavior with multiple employees and admitted that this was not an isolated incident.

103. Despite knowing that Blake's harassment was pervasive, Santiago and the Company took no immediate corrective measures to protect Ramirez or any of the other employees subjected to Blake's misconduct.

104. Santiago allegedly conducted an investigation, but it was nothing more than a façade. No meaningful action was taken.

105. Blake was not disciplined, separated, or even warned. Instead, he was allowed to continue his campaign of harassment unchecked, emboldened by the Company's complete failure to intervene.

106. On January 8, 2025, Ramirez was terminated.

107. The Company made no attempt to investigate Blake's misconduct.

108. Blake's sexual harassment was exclusively directed toward male employees.

109. Despite multiple employees being subjected to his sexual harassment, despite repeated reports, despite firsthand witnesses, the Company chose to do nothing.

**FIRST CAUSE OF ACTION**
**(Sex/Gender Discrimination in Violation of NYSHRL)**
**As to Both Plaintiffs**

110. Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

111. New York State Executive Law 296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition, or carrier status, or marital status of any individual, to refuse to hire or employ or to he or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

112. Defendants engaged in an unlawful discriminatory practice in violation of the New York Executive Law by creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her sex/gender.

113. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

**SECOND CAUSE OF ACTION**
**(Hostile Work Environment in Violation of NYSHRL)**
**As to Both Plaintiffs**

114.    Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

115.    Executive Law § 296 provides for a hostile work environment claim where Plaintiff shows that her work environment involved serious or pervasive harassment… of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.

116.    Plaintiff found her work environment to involve serious or pervasive harassment based on her sex/gender.

117.    That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### THIRD CAUSE OF ACTION
**(Retaliation in Violation of NYSHRL)**
**As to Plaintiff Raynaud**

118.    Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

119.    New York State Executive Law § 296(7) provides that is shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed practices forbidden under this article."

120.    Defendants engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

121. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of NYCHRL)
### As to Both Plaintiffs

122. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

123. The Administrative Code of the City of New York § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: "(a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

124. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(a) by creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her sex/gender.

125. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of NYCHRL)
### As to Both Plaintiffs

126. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

127. Pursuant to the New York City Administrative Code, a Plaintiff can establish a hostile work environment claim if she can show that was treated less well than other employees because of her sex/gender.

128. Plaintiff was treated less well by the Defendant because of her sex/gender.

129. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
### As to Plaintiff Raynaud

130. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

131. The New York City Administrative Code Title 8, § 8-107(1)(e) provides that it shall be an unlawful retaliatory practice: "For an employer… to discharge… or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

132. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(1)(e) by retaliating, continuing and escalating the sexual orientation discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

133. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of the New York City Administrative Code.

134. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the State Common Law and New York State Executive Law § 296 et seq., and awarding Plaintiff a recovery for damages sustained;

B. Declaring that the Defendants engaged in unlawful employment practices prohibited by the New York City Administrative Code Title 8, § 8-107 et seq., and awarding Plaintiff a recovery for damages sustained;

C. Declaring that the Defendants discriminated against, created a hostile work environment and retaliated against Plaintiff on the basis of her disability, and awarding Plaintiff a recovery for damages sustained;

D. Awarding Plaintiff compensatory damages for her mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorney's fees, costs and expenses; and

G. Awarding Plaintiff such other and further relief as the Court may deem just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 13, 2025
      New York, New York

Respectfully submitted,

**AKIN & SALAMAN PLLC**

*/s/ Hakan Sen*

_____

Hakan Sen Esq.
45 Broadway, Suite 1420
New York, NY 10006
Tel: (212) 825-1400
Fax: (212) 825-1440
Hakan@akinlaws.com